**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANGEL MORENO<br>RONALD BALDINUCCI<br>ANGEL BENITEZ<br>JOSE AMANDO M. BRIONES<br>CARLOS CASTANEDA<br>DONALD CHAPMAN<br>GERARD CIRILLO<br>EUCLIDES PONS<br><br>             Plaintiffs,<br><br>     v.<br><br>CITY OF NEW YORK and the NEW YORK<br>CITY POLICE DEPARTMENT,<br><br>             Defendants. | Case No. 1:22-cv-03358-MKV<br><br>**AMENDED COMPLAINT**<br><br>(Jury Trial Demanded) |

**AMENDED COMPLAINT**

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their Amended Complaint against the City of New York ("City") and the New York City Police Department ("NYPD") state as follows:

**INTRODUCTION**

1. Plaintiffs are current and former employees of the Defendants, City of New York and the New York City Police Department, in the position of Motor Vehicle Operators ("MVO"). Plaintiffs bring this action against Defendants for back pay, liquidated damages, attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendants' willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendants as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendants' unlawful

deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendants suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts, during their unpaid meal periods, and after their paid shifts. Plaintiffs are also similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendants fail to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

5. All Plaintiffs listed in Exhibit A (collectively referred to herein as "Plaintiffs") have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). In addition to representative Plaintiff Angel Moreno, additional opt-in Plaintiffs have submitted written consent to be Party-Plaintiffs in this action. The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

6. Each of the Plaintiffs in this action, while employed by Defendants has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

7. Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York,

New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

8. Defendant New York City Police Department is an administrative division of the City of New York and is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The NYPD's principal office is located at One Police Plaza, New York, NY 10007.

## FACTS

9. Plaintiffs are, and have been at all times material, employed by Defendants in the positions of Motor Vehicle Operator ("MVO") at the NYPD. Since approximately February 2022, all NYPD MVOs including Plaintiffs have been assigned to the Central Repair Shop ("CRS") on 58th Avenue in Woodside, Queens. Prior to approximately February 2022, Plaintiffs were assigned to individual repair shops located throughout the City as their work locations.

10. For example, at all times material, Plaintiff Angel Moreno has worked for Defendants as an MVO. Since approximately February 2022, Plaintiff Moreno has been assigned to the CRS on 58th Avenue in Woodside, Queens. Prior to approximately February 2022, Plaintiff Moreno was assigned to Shop 9 at 665 W. 58th Street in Manhattan.

11. Within the last three years and continuing to date, while working in the position MVO on behalf of Defendants, the job duties of Plaintiff Moreno and all others similarly situated include but are not limited to: towing and transporting vehicles involved in crimes and accidents to a precinct location; towing and transporting vehicles from precincts to an impoundment lot; towing and transporting broken-down NYPD vehicles to a repair shop; and generating "police service numbers" for police involved accidents

12. While working as an MVO at NYPD, Plaintiffs and all others similarly situated are regularly scheduled to work 40 hours a week. They are scheduled to work eight and one-half hour shifts with a one-half hour uncompensated meal period. However, Plaintiffs routinely work hours in addition to their regularly scheduled 40 hour shifts such that they routinely work overtime over 40 hours in a workweek. On such occasions, Defendants fail to compensate Plaintiffs and all others similarly situated for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, Defendants fail to compensate Plaintiffs and all others similarly situated for hours worked before the start of their scheduled shifts, after the end of their scheduled shifts, and work performed during their 30-minute unpaid meal periods.

13. While working as an MVO for Defendants, Plaintiffs and all others similarly situated may be compensated for hours worked over 40 in a workweek *if* the overtime hours were pre-approved by Defendants. However, even when Defendants compensate Plaintiffs and all others similarly situated for overtime hours that were pre-approved, Defendants systemically fail to pay Plaintiffs and all others similarly situated for this overtime work at the correct regular rate of pay.

14. Since October 2021, Defendants have captured the work hours of MVOs, including time spent working before their scheduled shift begins and/or after the end of their scheduled shifts, on the Defendants' electronic timekeeping system, "CityTime," which is maintained and accessible at Plaintiffs' work locations. However, CityTime automatically deducts one-half hour each day for Plaintiffs' uncompensated meal periods regardless of whether the Plaintiffs work through all or part of their uncompensated meal period.

15. CityTime tracks Plaintiffs' work time on a minute-by-minute basis.

16. Prior to October 2021, as well as continuing to the present, Defendants have captured the work hours of MVOs, including time spent working before their scheduled shift

begins and/or after the end of their scheduled shifts, on paper sign-in sheets. Prior to October 2021, this was the only way in which MVOs recorded their work time. There is a single sign-in sheet for each tour each day, with a line for each MVO. Although the sign-in sheets include a place to record the time that an MVO takes a meal break, if they take one at all, the Defendants fail to consider this for purposes of payroll and instead the City automatically deducted, and continues to deduct, 30 minutes for a meal period regardless of what is written on the sign-in sheet or whether any meal break was taken.

17. In addition, throughout the recovery period, Defendants have required MVOs to submit "Daily Labor Sheets" reflecting information about all of the Plaintiffs' assignments completed during a given shift, including but not limited to the time dispatched and the length of the assignment. Although these Daily Labor Sheets include a place for Plaintiffs to record whether they took a meal period and, if so, for how long, Defendants do not rely on this information for payroll purposes even when Plaintiffs specifically record that they were unable to take a duty-free meal break.

18. Plaintiffs' timekeeping and payroll data is in Defendants' exclusive possession and is not readily available to Plaintiffs.

### *Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated*

19. While working as MVOs at NYPD, Plaintiffs routinely work over 40 hours a week. Plaintiffs are scheduled for five shifts of eight hours and 30 minutes in length each week. 30 minutes is automatically deducted each shift as an uncompensated meal period. Thus, Plaintiffs and all others similarly situated are scheduled to perform a minimum of 40 hours of work per workweek as their regular schedule.

20. Plaintiffs frequently work overtime in addition to their regular 40 hours of work per week performing their regular job duties for which they are not compensated. Specifically, they routinely work additional hours before the official start time of their regularly scheduled shifts, after the end of their regularly scheduled shifts, and during their unpaid meal periods, all without compensation. This pre-shift, post-shift and meal period work causes Plaintiffs and all others similarly situated to work in excess of 40 hours in each week because they are scheduled to work 40 hours per workweek even without this additional overtime. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours which are in excess of 40 in a workweek.

21. Plaintiffs and all others similarly situated begin work before the official start time of their shifts and stop working after the end of their official shifts. Such pre-shift and post-shift work includes, but is not limited to, the tasks listed in Paragraph 11. Plaintiffs also perform pre-shift and post-shift tasks including, but not limited to, speaking to supervisors about and receiving daily assignments, obtaining their radio and clipboard, completing paperwork, and other work activities. Plaintiffs are not compensated for this pre-shift or post-shift work time.

22. Plaintiffs and all others similarly situated work during some or all of their 30-minute unpaid meal periods performing their regular job duties (i.e., the tasks listed in Paragraph 11) and continue to respond to towing and transport assignments. Plaintiffs are not compensated for this meal period work time.

23. For example, Plaintiff Moreno routinely works over 40 hours in a workweek. When Plaintiff Moreno works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and

6

one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 6:30 am to 3:00 pm (with summer hours of 6:00 am to 2:30 pm), Plaintiff Moreno routinely arrives approximately 10-15 minutes prior to the start of his scheduled shift and begins performing work tasks such as speaking to supervisors about and receiving daily assignments, preparing daily paperwork, and obtaining his radio and clipboard. In addition, Plaintiff Moreno works through his meal period approximately one to two times per week, performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Moreno is not compensated for at least approximately two hours and 25 minutes of additional overtime work beyond his scheduled shift per week.

24.     For example, Plaintiff Baldinucci routinely works in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Baldinucci works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 6:30 am to 3:00 pm (with summer hours of 6:00 am to 2:30 pm), Plaintiff Baldinucci routinely arrives prior to the start of his scheduled shift. He also works through part or all of his meal period approximately four times per week, performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Baldinucci is not compensated for at least approximately two hours of additional overtime work beyond his regularly scheduled shift per week.

25. For example, Plaintiff Benitez routinely works in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Benitez works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 6:30 am to 3:00 pm (with summer hours of 6:00 am to 2:30 pm), Plaintiff Benitez routinely arrives approximately 30 minutes prior to the start of his scheduled shift and begins performing work tasks such as speaking to supervisors about and receiving daily assignments and preparing daily paperwork. In addition, Plaintiff Benitez works through part or all of his meal period approximately four times per week, performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Benitez is not compensated for at least approximately four hours and 30 minutes of additional overtime work beyond his regularly scheduled shifts of 40 hours per week.

26. For example, Plaintiff Briones routinely works in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Briones works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 10:30 pm to 7:00 am, Plaintiff Briones arrives prior to the start of his scheduled shift, and regularly works through part or all of his meal period performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Briones is not

compensated for additional overtime worked in excess to his regularly scheduled shifts of 40 hours each week.

27. For example, Plaintiff Castaneda routinely worked in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Castaneda worked over 40 hours, Defendants failed to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 6:30 am to 3:00 pm (with summer hours of 6:00 am to 2:30 pm), Plaintiff Castaneda routinely arrived 5-10 minutes prior to the start of his scheduled shift and began performing work tasks such as speaking to supervisors about and receiving daily assignments and preparing daily paperwork. In addition, Plaintiff Castaneda worked through part or all of his meal period approximately two to three times per week, performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Castaneda was not compensated for at least approximately two hours and 20 minutes of additional overtime work beyond his scheduled shifts of 40 hours per week.

28. For example, Plaintiff Chapman routinely works in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Chapman works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 3:00 pm to 11:30 pm, Plaintiff Chapman routinely arrives approximately 15 minutes prior to the start of his

scheduled shift once per week and begins performing work tasks such as speaking to supervisors about and receiving daily assignments and preparing daily paperwork. In addition, Plaintiff Chapman works through part or all of his meal period approximately one time per month, performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Chapman is not compensated for at least approximately 15 minutes and up to 45 minutes of additional overtime work beyond his regularly scheduled shifts of 40 hours per week.

29. For example, Plaintiff Cirillo routinely works in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Cirillo works over 40 hours, Defendants fail to compensate him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, and 22 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 6:30 am to 3:00 pm (with summer hours of 6:00 am to 2:30 pm), Plaintiff Cirillo routinely arrives 5-10 minutes prior to the start of his scheduled shift and begins performing work tasks such as speaking to supervisors about and receiving daily assignments and preparing daily paperwork. In addition, Plaintiff Cirillo works through part or all of his meal period approximately two to three times per week, performing the duties listed in Paragraphs 11 and 22 such as continuing to complete assignments towing and transporting vehicles. Thus, Plaintiff Cirillo is not compensated for at least approximately two hours and 20 minutes of additional overtime work beyond his regularly scheduled shifts of 40 hours per week.

30. For example, Plaintiff Pons routinely works in excess of his regularly scheduled 40 hours in a workweek. When Plaintiff Pons works over 40 hours, Defendants fail to compensate

him for all of his work time, including but not limited to time spent performing tasks enumerated in Paragraphs 11, 21, 22, and 31 before the official start of his scheduled eight and one-half hour shift, after the end of his eight and one-half hour scheduled shift, and during his unpaid 30-minute meal period. Specifically, while assigned to a scheduled shift of 6:00 am to 2:30 pm, Plaintiff Pons routinely arrives 5-10 minutes prior to the start of his scheduled shift and begins performing work tasks such as preparing daily paperwork, including paperwork to generate police service numbers. In addition, Plaintiff Pons works through part or all of his meal period approximately four to five times per week, performing the duties listed in Paragraphs 11, 22, and 31 such as continuing to complete daily assignments. Thus, Plaintiff Pons is not compensated for at least approximately three hours and 20 minutes of additional overtime work beyond his regularly scheduled shifts of 40 hours per week.

31.     At all times material, in addition to performing the job duties described above of towing and transporting vehicles, certain Plaintiffs, such as Plaintiff Pons, have been assigned to work in the Central Repair Shop ("CRS") performing duties including generating "police service numbers" for police involved accidents. Employees assigned to perform this work at the CRS generally arrive and begin working prior to the start of their shift and continue working after their scheduled shift ends. In addition, because of the amount of work to be performed, employees assigned to this task work through their unpaid meal periods approximately four to five times per week. Since plaintiffs are otherwise regularly scheduled to work 40 hours a week, all of this unpaid work time is overtime work performed in excess of 40 hours a week.

32.     All MVOs employed by Defendants are similarly situated and routinely work more than 40 hours in a workweek, but are denied proper compensation for hours worked in excess of 40 because Defendants fail to compensate MVOs for pre-shift, post-shift, and meal period work.

11

The amount of pre-shift and post-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendants' timekeeping system and through other work and pay records.

### *The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

33. While working as MVOs during the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to vehicle differentials. These payments are made pursuant to Agency-wide policy, and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all others similarly situated. However, Defendants fail to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs. Defendants fail to include these payments in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice.

34. MVOs are eligible to earn a night shift differential when they work regularly scheduled hours between 6:00 pm and 7:00 am. Thus, Plaintiffs and similarly situated MVOs earn night shift differential on at least some of their scheduled hours during every single one of their regular work shifts.

35. For example, Plaintiff Moreno has earned vehicle differentials and night shift differentials while working as an MVO during weeks in which he also earned overtime compensation. In fact, Plaintiff Moreno earns a vehicle differential and a night shift differential on every shift that he works as an MVO. Similarly, all Plaintiffs earn vehicle differentials and night shift differentials at any time they work a regular schedule starting at 6:30 am (or earlier) or work a schedule including hours after 6:00 pm. However, Defendants failed to include the vehicle and

12

night shift differentials in the regular rate of pay upon which Plaintiff Moreno's overtime rates are based during weeks in which he also earned overtime compensation.

36. All MVOs employed by Defendants who receive these payments pursuant to Agency-wide policy and/or collective bargaining agreement are similarly situated and routinely work more than 40 hours in a workweek, but are denied proper compensation for hours worked in excess of 40 because Defendants continue to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each Plaintiff can be identified through the Defendants' timekeeping system and through other work and pay records, which are in the Defendants' exclusive custody and control.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

37. Plaintiffs hereby incorporate by reference paragraphs 1 through 36 in their entirety and restate them herein.

38. At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 11, 21 and 22, without compensation before the start of their shifts and after the end of their scheduled shifts, all of which is recorded on Defendants' timekeeping system. Plaintiffs and all others similarly situated also have performed work without compensation during their unpaid meal periods. This pre-shift, post-shift, and meal work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a given week without proper overtime compensation.

Accordingly, as a result of these pay practices, Defendants have failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

39.     Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendants have failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, after the end of their scheduled shifts, and during their uncompensated meal periods.

40.     As a result of Defendants' willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendants and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendants' liability can be ascertained.

41.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay overtime compensation as alleged herein.

42. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

43. Plaintiffs hereby incorporate by reference paragraphs 1 through 42 in their entirety and restate them herein.

44. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendants have failed to include certain premium payments such as vehicle differential and night shift differential pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and of all others similarly situated, resulting in Defendants paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendants' failure to include vehicle differential pay and other forms of additional compensation in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

45. As a result of the Defendants' systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendants and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty

imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendants' liability can be ascertained.

46. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay proper overtime compensation.

47. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: July 20, 2022                                     Respectfully submitted,

>                                     */s/ Gregory K. McGillivary*
>                                     Gregory K. McGillivary
>                                     Sara L. Faulman
>                                     Sarah M. Block
>                                     McGILLIVARY STEELE ELKIN LLP
>                                     1101 Vermont Ave., N.W., Suite 1000
>                                     Washington, DC  20005
>                                     Phone: (202) 833-8855
>                                     gkm@mselaborlaw.com
>                                     slf@mselaborlaw.com
>                                     smb@mselaborlaw.com
>
>                                     */s/ Hope Pordy*
>                                     Hope Pordy
>                                     Elizabeth Sprotzer
>                                     SPIVAK LIPTON, LLP
>                                     1040 Avenue of the Americas
>                                     20th Floor New York, NY  10018
>                                     Phone: (212) 765-2100
>                                     hpordy@spivaklipton.com
>                                     esprotzer@spivaklipton.com
>
>                                     *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2022, the foregoing Amended Complaint was filed on this Court's ECF system, which will send electronic notification to the following counsel for defendant:

Daniel Tarolli
Assistant Corporation Counsel
Office of the Corporation Counsel
    of the City of New York
100 Church Street
New York, NY 10007
dtarolli@law.nyc.gov

                                    */s/ Gregory K. McGillivary*
                                    Gregory K. McGillivary